**DEREK SMITH LAW GROUP, LLP**
Casey Barkhordarian, Esq. (SBN 352914)
633 W. 5th Street, Suite 3250
Los Angeles, CA 90071
Telephone: (310) 602-6050
Facsimile: (310) 602-6350
Email: casey@dereksmithlaw.com

*Attorneys for Plaintiff JANE DOE*

**FEDERAL DISTRICT COURT OF THE UNITED STATES**

**CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

JANE DOE, an Individual,

Plaintiff,

vs.

ANTHONY NICHOLAS DIPAOLO, individually; and DOES 1-25, inclusive,

Defendant(s).

Case No.:

COMPLAINT FOR MONETARY AND PUNITIVE DAMAGES

1. Violation of the Trafficking Victims' Protection Act [18 U.S.C. § 1591]
2. Sexual Assault
3. Sexual Battery

DEMAND FOR JURY TRIAL

**COMES NOW PLAINTIFF, JANE DOE[1],** and for causes of action against the Defendants and each of them, alleges as follows upon information and belief:

## I.

## PARTIES

1. At all times material, JANE DOE (hereinafter referred to as "Plaintiff"), was an individual 17-year-old female minor living in foster care and residing in New York City, New York.

2. At all times material, Defendant ANTHONY NICHOLAS DIPAOLO (hereinafter referred to as "DIPAOLO") was and is a 48-year-old male residing in Temecula, California.

## II.

## JURISDICTION

3. Venue properly lies in the County of Riverside in that the Plaintiff resided in the county during the relevant times; all Defendants reside in this county, do business in, and/or committed the wrongful acts alleged herein within the County of Riverside.

4. This court has jurisdiction to hear both statutory and common law claims against Defendants.

## III.

## FACTS COMMON TO ALL CAUSES OF ACTION

5. At all times material, Plaintiff was an individual 17-year-old female minor living in foster care and residing in New York City, New York.

6. Plaintiff, a 17-year-old girl, was living in foster care at the time and sought ways to get out of the foster care system. Plaintiff looked to SeekingArrangements.com to find an individual that she could get financial support from so that she could escape the foster care system and live a stable life.

7. In or around 2016, Defendant DIPAOLO met Plaintiff on SeekingArrangements.com (Seeking.com.) Seeking.com is a website typically used and known for setting up older and men ("Sugar Daddies") with younger women.

[1] Because of the nature of the allegations herein, Plaintiff is identified by a pseudonym in order to preserve her confidentiality and to avoid any potential vilification or harm, pursuant to applicable law, including *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000).

8. After Defendant DIPAOLO met Plaintiff on Seeking.com, Defendant DIPAOLO questioned how old Plaintiff was. **Plaintiff informed Defendant DIPAOLO that Plaintiff was an underage 17-year-old girl**. Despite this, Defendant DIPAOLO lied to Plaintiff and informed her that he was 38 years old, which was 10 years younger than his actual age of 48.

9. During this time, Plaintiff also disclosed to Defendant DIPAOLO that she did not have citizenship status in the United States.

10. Defendant DIPAOLO wanted to text Plaintiff over SMS, however Plaintiff did not have cellular service due to her having no money or financial income. As an alternative, Defendant DIPAOLO and Plaintiff continued texting each other on a free texting app that Plaintiff could use while connected to WIFI.

11. Over the texting app, Defendant DIPAOLO promised Plaintiff the opportunity to live in his luxurious home in exchange for Plaintiff working for him as an in-house maid. The chance to live at a large comfortable home in California with financial stability was significantly appealing to Plaintiff since she had lived in multiple different foster homes for the past several years. Because of this, Plaintiff continued to talk to Defendant DIPAOLO, eager for a chance to live in a safe home that provided stability to Plaintiff.

12. Following this promise, Defendant DIPAOLO quickly steered the conversation into a conversation that was sexually explicit, despite Plaintiff being a minor.

13. Defendant DIPAOLO demanded that Plaintiff send Defendant DIPAOLO videos of Plaintiff's upper body without her shirt on and only wearing a bra. With the strong desire to live at Defendant DIPAOLO's home, Plaintiff obeyed Defendant DIPAOLO and sent Defendant DIPAOLO videos of Plaintiff wearing only a bra. Upon receiving videos from Plaintiff, Defendant DIPAOLO showered Plaintiff in complements on her physical appearance.

14. In or around December 2016, Defendant DIPAOLO, satisfied with Plaintiff's appearance and subservience, purchased Plaintiff a round-trip flight so that Plaintiff could come see Defendant DIPAOLO's home. Defendant DIPAOLO also assured Plaintiff that Defendant DIPAOLO's girlfriend would be there as well. The belief that a woman would be at Defendant DIPAOLO's home comforted Plaintiff.

15. Plaintiff packed her bag, and informed her foster mother that Plaintiff was visiting a friend in Temecula, CA.

16. On or around December 28, 2016, Plaintiff arrived in California, and Defendant DIPAOLO picked Plaintiff up from the airport in his car.

17. Defendant DIPAOLO drove Plaintiff to Defendant DIPAOLO's gated home. After entering the gate and parking in the driveway, **Defendant DIPAOLO leaned over the console of the car and kissed Plaintiff**. Plaintiff was shocked and disgusted that Defendant DIPAOLO kissed Plaintiff but had such a strong desire to live with Defendant DIPAOLO that she tolerated it. Defendant DIPAOLO continued kissing Plaintiff for several minutes until they went inside.

18. Upon entering the home, Defendant DIPAOLO disclosed to Plaintiff that Defendant DIPAOLO's girlfriend was not home and was in Florida visiting her family. Plaintiff was alone in Defendant DIPAOLO's home with only Defendant DIPAOLO.

19. Defendant DIPAOLO gave Plaintiff a tour of his home, showing off the size and beautiful aesthetics of his home. Defendant DIPAOLO also showed Plaintiff picture frames throughout his home which displayed pictures of his son and daughter. Defendant DIPAOLO introduced Plaintiff to his dogs, and informed Plaintiff of his business which sold products for dogs:



20. Defendant DIPAOLO intentionally showed Plaintiff, an underage girl, luxurious and appealing aspects of his home and life as part of a scheme to entice and lure Plaintiff into a position where Defendant DIPAOLO could rape Plaintiff.

21. At the end of Defendant DIPAOLO's tour, Defendant DIPAOLO lured Plaintiff into his room.

22. Upon entering Defendant DIPAOLO's room, Defendant DIPAOLO grabbed and kissed Plaintiff. Defendant DIPAOLO's forceful kissing deeply distressed and discomforted Plaintiff. Plaintiff also noticed numerous wrinkles on Defendant DIPAOLO's forehead, which weren't present in pictures of Defendant DIPAOLO that Plaintiff saw on Seekin.com. Plaintiff questioned Defendant DIPAOLO's age, to which Defendant DIPAOLO replied ***"I'm actually 48."*** Defendant DIPAOLO lied about his age as part of a scheme to lure Plaintiff to his home so he could rape an underage girl.

23. Defendant DIPAOLO continued kissing Plaintiff and pulled on Plaintiff's clothes to take

them off. Plaintiff protested and said *"no"* numerous times. Defendant DIPAOLO was visibly enraged each time Plaintiff refused to take off her clothes which scared Plaintiff. Defendant continued to repeatedly demand that Plaintiff take off her clothes.

24. Plaintiff replied to Defendant DIPAOLO that she was a virgin and that in her culture women wait until they're married to be that intimate with a man.

25. Frustrated and dissatisfied with Plaintiff, Defendant DIPAOLO continued pulling off Plaintiff's clothes while she verbally refused and repeatedly told Defendant DIPAOLO "*no*." After several minutes of resisting, scared and trapped in Defendant DIPAOLO's home, Plaintiff stopped fighting and Defendant DIPAOLO removed all of Plaintiff's clothes leaving her completely naked in his room.

26. Defendant DIPAOLO threw Plaintiff onto his bed and arranged himself on top of her body as Plaintiff laid on her back. Plaintiff repeatedly pleaded, urged, and begged Defendant DIPAOLO to not insert his penis inside Plaintiff's vagina since she was a virgin and Defendant DIPAOLO was much larger than Plaintiff. Defendant DIPAOLO ignored Plaintiff's pleas and attempted to force himself inside Plaintiff but was unsuccessful as he could not fit his penis inside Plaintiff's vagina.

27. Plaintiff continued pleading with Defendant DIPAOLO and begged him to try another time since he wasn't fitting. Defendant DIPAOLO continued getting visibly upset and frustrated at Plaintiff's refusal to have sex with Defendant DIPAOLO and Defendant DIPAOLO's inability to penetrate Plaintiff.

28. After several minutes of struggling, Plaintiff overwhelmed with fear entered a state of tonic immobility and completely froze. At this moment, after numerous failed attempts, **Defendant DIPAOLO penetrated his penis inside Plaintiff's vagina**. Plaintiff screamed in pain and shouted, *"Oww! Oww get it out! Please get it out, it hurts!"* Defendant DIPAOLO took his penis out of Plaintiff for a few seconds and then shoved his penis back into Plaintiff. Defendant DIPAOLO repeated this process numerous times and was visibly upset anytime that Plaintiff begged Defendant DIPAOLO to stop or shouted that she was in extreme pain. **Defendant DIPAOLO refused to stop raping Plaintiff even as she began to bleed from her vagina.**

29. **Defendant DIPAOLO raped Plaintiff, who was an underage 17-year-old girl.**

30. After Defendant DIPAOLO raped Plaintiff, he directed her to take a shower. Defendant DIPAOLO informed Plaintiff that he would wash the bed sheets as they were covered in the blood that spilled from Plaintiff's vagina.

31. Plaintiff obeyed Defendant DIPAOLO and showered off the blood and cried as she showered. Plaintiff continued to cry throughout the night as she tried to sleep in the bed that Defendant DIPAOLO provided her with.

32. On or around following day, Defendant DIPAOLO took Plaintiff to a supermarket to buy food and other necessities for her to have at Defendant DIPAOLO's home.

33. On or around January 2, 2017, Defendant DIPAOLO drove Plaintiff back to the airport for Plaintiff's flight home. Defendant DIPAOLO continued chatting with Plaintiff over the texting app for several weeks after until he eventually stopped texting Plaintiff.

34. Defendant DIPAOLO lured a 17-year-old girl that was undocumented and desperate for stable housing with promises of a life that included financial support and a beautiful home so that Defendant DIPAOLO could rape her. Defendant DIPAOLO intentionally chose Plaintiff because she was extremely vulnerable and enticed her with specific promises and offers such as housing and money because he knew how vulnerable Plaintiff was.

35. Defendant DIPAOLO, after receiving sexual gratification, did not provide Plaintiff with shelter, a job, or any other economic benefit.

36. As a result of Defendant DIPAOLO's above intolerable treatment and rape, Plaintiff has suffered and will continue to suffer from insomnia, racing thoughts, anxiety, nightmares, low confidence, depression, suicidal ideations, and post-traumatic stress.

37. Because of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

38. As Defendant DIPAOLO's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant DIPAOLO.

39. Plaintiff claims a continuous practice of sexual assault and sex trafficking and claims a

continuing violation and makes all claims herein under the continuing violations doctrine.

40. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting conditions as a result of Defendant's sexual assault, battery, trafficking, and rape.

41. Furthermore, in such case, Plaintiff claims that Defendant owed and breached his duty to Plaintiff and is liable therefore for negligence.

42. The above are just some of the examples of the unlawful sexual assault, battery, trafficking, and rape to which the Defendant subjected the Plaintiff on a continuous and on-going basis throughout Plaintiff's interactions with Defendant DIPAOLO .

**IV.**

**FIRST CAUSE OF ACTION FOR VIOLATION OF THE TRAFFICKING VICTIMS' PROTECTION ACT [18 U.S.C. § 1591]**

(Against Defendant DIPAOLO)

43. Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

44. In addition to what is stated above, Defendant DIPAOLO engaged in interstate commerce as described herein through, inter alia, his use of the internet, phones, text messages, transportation of Plaintiff, and payment of Plaintiff's food and other necessities. Defendant DIPAOLO owned the property in which a substantial number of the alleged acts took place, and Defendant DIPAOLO knew or should have known that his property was being used to commit such alleged acts.

45. Furthermore, the promises of a job as an in-house maid, housing, and financial stability that Defendant used to entice Plaintiff for sex acts was a position which would have taken and did take Plaintiff across state lines for different events which Defendant would have and do profit from.

46. Defendant DIPAOLO, in effecting interstate commerce by purchasing a flight, food, and other goods for Plaintiff, and through the enticement, solicitation, transportation, and recruitment of Plaintiff across interstate lines through the use of a phone application and flight ticket, enticed, coerced, solicited, and recruited Plaintiff to travel from New York to California to be sexually assaulted, battered, and raped by Defendant DIPAOLO in exchange for income and housing at Defendant DIPAOLO's luxurious home.

47. Defendant DIPAOLO enticed, coerced, transported, solicited, and recruited Plaintiff to come to Defendant DIPAOLO's home in exchange for income and housing, and committed the sexual assault and battery on Plaintiff by force, fraud, and coercion.

48. Thereafter, because Plaintiff was not a willing and enthusiastic participant in the sexual assault and battery, Defendant DIPAOLO forced Plaintiff to engage in sexual acts against Plaintiff's will and through fraud, coercion, and physical force. Defendant DIPAOLO then ultimately ceased communication with Plaintiff and never provided Plaintiff a job, income, or housing.

49. During all of the acts above, Plaintiff was under the age of 18, and Defendant DIPAOLO knew or should have known that Plaintiff was below the age of 18. Plaintiff disclosed her age to Defendant DIPAOLO sometime prior to Defendant DIPAOLO raping Plaintiff.

50. Plaintiff brings this claim pursuant to all applicable sections of 18 U.S.C.A. §§ 1591, 1595 in that "An individual who is a victim of a violation of Section 1589, 1590, or 1591 of title 18, United States Code, may bring a civil action in any appropriate district court of the United States. The court may award actual damages, punitive damages, reasonable attorneys' fees, and other litigation costs reasonably incurred." 18 U.S.C.A. §1595(a).

51. 18 USC § 1591. Sex trafficking of children or by force, fraud, or coercion states as follows:

> **(a)** Whoever knowingly—
>
> **(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> **(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and

will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

**(b)** The punishment for an offense under subsection (a) is--

**(1)** if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

**(2)** if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

**(c)** In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

**(d)** Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be fined under this title, imprisoned for a term not to exceed 25 years, or both.

**(e)** In this section:

**(1)** The term “abuse or threatened abuse of law or legal process” means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

**(2)** The term “coercion” means--

**(A)** threats of serious harm to or physical restraint against any person;

**(B)** any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

**(C)** the abuse or threatened abuse of law or the legal process.

**(3)** The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

**(4)** The term "participation in a venture" means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).

**(5)** The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

**(6)** The term "venture" means any group of two or more individuals associated in fact whether or not a legal entity.

52. Additionally, 18 USCA § 1595. Civil remedy states as follows:

(a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

(b)(1) Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the Plaintiff is the victim.

(2) In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court.

(c) No action may be maintained under subsection (a) unless it is commenced not later than the later of--

(1) 10 years after the cause of action arose; or

(2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time

of the alleged offense

53. Broad, expansive language is employed in Trafficking Victims' Protection Act (TVPA) and its remedial provision, which permits civil actions for damages under TVPA. *Noble v Weinstein*, 335 F Supp 3d 504 [SDNY 2018], mot to certify appeal denied, 17-CV-09260 (AJN), 2019 WL 3940125 [SDNY Aug. 5, 2019].

54. Defendant DIPAOLO subjected Plaintiff to commercial sex acts by force and coercion, including by both physical and financial means.

55. 18 U.S.C. 1591 § (e)(3) defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."

56. A commercial sex act means any sex act, on account of which anything of value is given to or received by any person. The specific conditions are the use of force, fraud, or coercion, or conduct involving persons under the age of 18. See the Department of Justice's definition: https://www.justice.gov/crt/involuntary-servitude-forced-labor-and-sex-trafficking-statutesenforced. "Section 1591 criminalizes sex trafficking, which is defined as causing a person to engage in a commercial sex act under certain statutorily enumerated conditions. A commercial sex act means any sex act, on account of which anything of value is given to or received by any person. The specific conditions are the use of force, fraud, or coercion, or conduct involving persons under the age of 18."

57. Section 1595 of Title 18 gives any "individual who is a victim" of a violation of - among other provisions - Section 1591 the right to bring a civil action against "the perpetrator" or "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of' Section 1591. Defendant DIPAOLO knew or should have known that he was receiving financial benefits and value in his sex trafficking of Plaintiff.

58. Defendant DIPAOLO conditioned Plaintiff's housing and financial support on Defendant DIPAOLO's ability to sexually assault, batter, rape, and engage in forced sex acts with Plaintiff. Additionally, the financial aspect to the relationship was a key element of the "forced" sex acts in that Plaintiff would not be allowed to live at Defendant DIPAOLO's home or receive financial support unless Plaintiff engaged in the described sex acts. Defendant DIPAOLO used the promise of employment,

housing, and financial stability to entice, solicit, and coerce Plaintiff into engaging in the described sex acts. Defendant DIPAOLO also used physical force to force Plaintiff to engage in commercial sex acts.

59. Defendant DIPAOLO knowingly recruited, enticed, harbored, and/or obtained Plaintiff through means of force, threats of force, and by a combination of such forceful means, and forcibly caused Plaintiff to engage in an unwanted sexual act for a commercial benefit.

60. Defendant DIPAOLO knew, or should have known, that he used his scheme to recruit, entice, harbor, and/or obtain Plaintiff through means of force, threats of force, and/or by a combination of such forceful means, and forcibly cause Plaintiff to engage in an unwanted sexual acts for a commercial benefit.

61. 18 USC 1594 further states that it shall be unlawful for anyone who “obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section.” Assuming Defendant takes such retaliatory action as stated above, Plaintiff makes a claim for such.

62. Defendant is liable to Plaintiff under 18 U.S.C. §§ 1591, 1594 and 1595.

## V.

## SECOND CAUSE OF ACTION FOR SEXUAL ASSAULT

(Against Defendant DIPAOLO)

63. Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein.

64. Defendant DIPAOLO committed several overt acts of sexual abuse, assault, battery, and rape against Plaintiff.

65. Defendant DIPAOLO intended to inflict a harmful or offensive conduct against Plaintiff and intended to cause Plaintiff to fear such contact. Defendant DIPAOLO knew that the consequence of an offensive contact was certain to result, as Defendant DIPAOLO’s sexual abuse was intentionally inflicted.

66. Defendant DIPAOLO’s actions placed Plaintiff in apprehension of an immediate harmful or offensive contact.

67. Plaintiff did not consent, and **as a minor could not consent** to Defendant DIPAOLO’s harmful or offensive contact with Plaintiff’s person, or to Defendant DIPAOLO’s conduct, putting

Plaintiff in imminent apprehension of such contact.

68. In doing the things herein alleged, Defendant DIPAOLO violated Plaintiff's right under California Civil Code § 43 of protection from bodily restraint or harm. In doing the things herein alleged, Defendant DIPAOLO violated his duty, pursuant to California Civil Code §1708, to abstain from injuring the person of Plaintiff or infringing upon Plaintiff's rights.

69. As a result of the above-described conduct and wrongful acts of Defendant, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress including embarrassment, loss of self-esteem, disgrace, humiliations, and loss of enjoyment of life; has suffered and continues to suffer and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life; will sustain loss of earnings and earning capacity, and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

70. Defendant DIPAOLO's sexual assault is a substantial factor in bringing about these harms to Plaintiff.

71. The conduct of Defendant was oppressive, malicious and despicable in that it was intentional, done to a minor, and done in conscious disregard for the rights and safety of others, and were carried out with a conscious disregard of Plaintiff's right to be free from such tortious behavior, such as to constitute oppression, fraud or malice pursuant to California Civil Code section 3294, entitling Plaintiff to punitive damages against Defendant DIPAOLO in an amount appropriate to punish and set an example of Defendant.

**VI.**

**THIRD CAUSE OF ACTION FOR SEXUAL BATTERY**

(Against Defendant DIPAOLO)

72. Plaintiff incorporates by reference and re-alleges the preceding paragraphs, as though fully stated herein

73. As described herein above, Defendant DIPAOLO caused, and intended to cause, imminent apprehension of harmful and offensive contact with an intimate part of another. In doing these acts, Defendant DIPAOLO caused, and intended to cause, imminent apprehension of a harmful and offensive

contact with Plaintiff, in violation of, inter alia, Civil Code section 1708.5, and related laws. At no time did Plaintiff consent to any of the acts of Defendant DIPAOLO described herein.

74. As a result of Defendant DIPAOLO's conduct, Plaintiff was placed in apprehension and fear for Plaintiff's physical well-being.

75. Defendant DIPAOLO knew or should have known that Defendant DIPAOLO's conduct would place Plaintiff in apprehension and fear for Plaintiff's physical well-being.

76. Defendant DIPAOLO's sexual battery involved actual physical contact.

77. Defendant DIPAOLO did the aforementioned acts with the intent to cause a harmful or offensive contact with an intimate part of Plaintiff's person and would offend a reasonable sense of personal dignity. Further, said acts did cause harmful or offensive contact with an intimate part of Plaintiff's person that would offend a reasonable sense of personal dignity.

78. Because of the financial power Defendant DIPAOLO held over Plaintiff, Plaintiff's age, and Plaintiff's mental and emotional state, Plaintiff was unable to, and did not, give legal consent to such acts.

79. As a direct, legal and proximate result of the acts of Defendant DIPAOLO, Plaintiff sustained serious and permanent injuries to Plaintiff's person, all of Plaintiff's damage in an amount to be shown according to proof and within the jurisdiction of the Court.

80. As a proximate result of the wrongful acts of Defendant DIPAOLO, Plaintiff has been harmed in that Plaintiff has suffered actual, consequential and incidental financial losses, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code sections 3287 and/or 3288 and/or any other provision of law providing for prejudgment interest.

81. As a proximate result of the wrongful acts of Defendant, and each of them, Plaintiff has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, depression, posttraumatic stress disorder, suicidal ideations, and emotional distress. Plaintiff has further experienced other physical symptoms arising from the wrongful acts of Defendant. Plaintiff will continue to experience said pain and physical and emotional suffering for a period in the future Plaintiff cannot presently ascertain, all in an amount subject to proof at the time of trial.

82. The acts taken toward Plaintiff were carried out by and/or ratified by Defendants in a despicable, oppressive, fraudulent, malicious, deliberate, egregious, and inexcusable manner pursuant to California Civil Code Section 3294, in order to injure and damage Plaintiff, thereby justifying an award to them of punitive damages in a sum appropriate to punish and make an example of Defendant DIPAOLO.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment as follows:

As to All Causes of Action

1. For general, compensatory, and/or special damages in an amount according to proof for Plaintiff's injuries, mental and/or emotional distress, medical expenses, actual financial losses, consequential financial losses, incidental financial losses, loss of past and future earnings, loss of salary and benefits, and all damages flowing therefrom for an amount in excess of $10,000,000;
2. For all general and special damages to compensate Plaintiff for an amount in excess of $10,000,000;
3. For punitive damages, as allowed by law, that will sufficiently punish, make an example of, and deter future conduct by Defendants;
4. For prejudgment and post-judgment interest according to any applicable provision of law, according to proof for an amount in excess of $10,000,000;
5. For attorney's fees and costs for an amount in excess of $10,000,000;
6. Costs of suit; and
7. For such other and further relief as the Court may deem just and proper.

Dated: September 28, 2026

**DEREK SMITH LAW GROUP, LLP**
Attorneys for Plaintiff

By: */s/ Casey Barkhordarian*
CASEY BARKHORDARIAN, ESQ.
633 West 5th St., Suite 3250
Los Angeles, CA 90071
(310) 602-6050

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues to be tried as provided by California Code of Civil Procedure § 631.

Dated: September 28, 2026

**DEREK SMITH LAW GROUP, LLP**
Attorneys for Plaintiff

By: *__/s/ Casey Barkhordarian__*
CASEY BARKHORDARIAN, ESQ.
633 West 5th St., Suite 3250
Los Angeles, CA 90071
(310) 602-6050